[File No. 7323]

BALTHAUSER & MOYER, Inc., Respondent, v. MERLE HAY-
DEN, Appellant.

(59 NW2d 828)

Opinion filed August 14, 1953

*Franklin E. Molland,* for appellant.

*Maxhoff, Kellogg, Muggli & Kirby,* for respondent.

Burke, J. In this action plaintiff obtained judgment against defendant for damages for the breach of a contract for the purchase of cattle. The case was tried to the court without a jury and upon appeal the defendant has demanded a trial de novo in this court.

There are but two issues for consideration. First, does the evidence support the trial court's finding that defendant breached his contract? Second, if the finding that defendant breached

his contract is sustained, does the evidence support the trial court's finding as to the amount of damages?

By the terms of a written agreement, executed by the parties on August 8, 1950, plaintiff agreed to buy and defendant agreed to sell twenty to twenty-five two year old steers at twenty-five cents a pound. The defendant agreed to deliver the steers F. O. B. cars at Medora, on September 15, 1950, or as soon thereafter as cars were available, the exact date being at the buyer's option. The steers were to be weighed "without shrink" and were to be paid for in full at the time of delivery. At the time of the execution of the agreement plaintiff advanced to defendant $750.00 in part payment of the purchase price.

On September 6th, plaintiff wrote to defendant, "Please have strs. in the morning of September 15 as we load on the stock pick up due at 9:15 A. M. at Medora." Defendant did not deliver the steers as directed and made no effort to inform plaintiff of his reasons for non-delivery. On September 16th, plaintiff again wrote to defendant, this time directing defendant to deliver the steers on the morning of September 20th. In the ordinary course of the mails this notification would have reached defendant's mail box on September 17th. Defendant stated that he took the notice from his mail box on September 19th at 4:30 P. M. The next day, September 20th, defendant loaded up the steers and transported them to Medora, arriving there, not in the morning, but between 1:30 and 2:00 o'clock in the afternoon just as the only train upon which the steers could be shipped that day was pulling out of town. He drove to the stockyards. There he was unable to find plaintiff's agent. After waiting about an hour and a half he drove back to his ranch. He testified that he made inquiries of two people in his effort to locate plaintiff's agent, but made no inquiry at the office of the railroad company's agent. Meanwhile plaintiff's agent had arrived at the stockyards in Medora at 7:00 A. M. on September 20th. He had waited there for defendant until the train pulled out at 1:30 or for more than six hours. He then went to a funeral at Sentinel Butte and returned to Medora at 4:00 P. M. or shortly after defendant had left town. The next day plaintiff's agent saw defendant at his ranch. His object was to arrange a new

delivery date for the steers. There the defendant told him "You ain't got anything more to do with those cattle, I delivered them and you weren't there." Two days later defendant sold the cattle to another buyer at an increase of three cents a pound over his contract price with the plaintiff.

We think that the record amply supports the trial court's finding that defendant breached the contract. Defendant had agreed to deliver the cattle at a time to be fixed by the plaintiff. On two occasions he failed to make delivery in accordance with plaintiff's instructions. When he failed to deliver on September 15th, he did not inform plaintiff as to the reasons for his failure, nor did he make any attempt to notify plaintiff that delivery on September 20th would be late. Defendant offered testimony which tended to show that delivery in accordance with plaintiff's instructions was impossible, not because of any unreasonable demand on the part of the plaintiff, but because of the condition of the roads on September 15th, and because he didn't go to his mail box the 18th and thus failed to receive the notice to have the cattle in Medora on the morning of the 20th until late in the afternoon on the 19th, at which time it was too late to round up the cattle for morning delivery the following day.

Whatever may have been defendant's excuses for not making delivery in accordance with plaintiff's instructions and whether such excuses might justify his failure to deliver at the time specified, it is certainly clear that the transportation of the cattle to the place of delivery at a time other than that specified by the plaintiff, when plaintiff's agent was not present to receive them, was not a sufficient tender of delivery to put the plaintiff in default. It is only the neglect or refusal of a buyer to accept delivery of goods properly tendered that will place him in default in this respect. Section 51-0152 NDRC. In this case there was neither refusal to accept delivery nor neglect on the part of the buyer's agent. He had no opportunity to refuse and there could be no neglect on his part because he was at the place specified ready to accept delivery during all of the time within which delivery was to be made and he had had no notice that the delivery would be attempted at a later time.

When defendant thereafter refused to discuss the fixing of another time for the delivery of the steers and sold them to another buyer, he clearly breached the contract.

The trial court found, that because of this breach of contract, plaintiff suffered damages in the sum of $1170.00. Of this sum, $750.00 represented the advance payment made by plaintiff to defendant on the purchase price, the balance represented the damages sustained by plaintiff because of an advance in the price of beef cattle. There can, of course, be no question of plaintiff's right to a return of his advance payment on the purchase price. In computing the additional damages the trial court took the minimum number of steers called for by the contract, namely 20 steers, the average weight of the steers at 700 pounds and the advance in price at three cents a pound. The computation resulted in a finding that the additional damages were $420.00.

Defendant challenges this computation solely upon the ground that the evidence does not warrant a finding that the average weight of the steers was 700 pounds.

Plaintiff's agent testified that he saw defendant's steers on August 6th; that altogether defendant had about 34 steers; that about 8 or 9 of these steers were below standard, that he estimated that the weight of the 20 to 25 better steers, which he bought, would have averaged 700 pounds on September 20th. This estimate was based upon his judgment that the steers averaged 670 pounds when he saw them and that there would be an average gain of thirty pounds per animal between that time and September 20th. As foundation for this testimony the witness stated that he had been in the business of raising and buying cattle for thirty-five years and was experienced in judging the weight of cattle on the range. He conceded that his estimate was not based upon a close inspection but was made while riding through the pasture in an automobile. Opposed to this testimony is the actual scale weight of the 34 steers at the time they were sold. At that time the average for the 34 was 567 pounds. It is clear that the estimate of plaintiff's agent is too high, even if we make allowance for the fact that 8 or 9 of the steers were considerably below standard. Thus if we were to assume the

top 25 steers averaged 700 pounds apiece, and the average weight for the whole lot was 567 pounds the poor nine would have averaged less than 200 pounds apiece. On its face, such a result is improbable. It is true, that the top steers averaged more than 567 pounds, but how much more, we cannot say without indulging in pure speculation. In our judgment the finding of the trial court as to average weight must be reduced to the average shown by the actual scale weights. This has the effect of reducing the additional damages from $420.00 to $340.20 and the total judgment for damages from $1170.00 to $1090.20.

The judgment of the district court will be modified accordingly and as modified, affirmed.

Morris, C. J., and Christianson, Grimson and Sathre, JJ., concur.